UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------X
NELSON RIVERA

       Petitioner,                    MEMORANDUM AND ORDER

   -against-                     Civil Action No.
                                    CV-04-5050(DGT)
DALE ARTUS, Superintendent, Clinton
Correctional Facility,

       Respondent.

-------------------------------X

Trager, J:

    Nelson Rivera ("petitioner" or "Rivera") files this pro se
petition to vacate his conviction and sentence pursuant to 28
U.S.C. § 2254, claiming that he was denied due process of law and
equal protection under the Fourteenth Amendment of the United
States Constitution.  For the following reasons, the petition is
denied.

## Background

### (1)

### Factual Background

    Petitioner and his co-defendant, Robert Molina ("Molina"),
were indicted for the burglary and robbery of Bonnie Mejia
("Mejia").  Queen County Indictment 1894/94.  Mejia was to be the
main testifying witness against petitioner and Molina in the
upcoming burglary/robbery trial.  However, three days before the

1

burglary/robbery case was to go to trial, Mejia was reported missing by her family.

When the Nassau County detectives assigned to the burglary/robbery case learned of Mejia's disappearance, they sought out Rivera and Molina at the Criminal Court building in Queens County, where the two men had been for a proceeding related to the burglary/robbery trial. Traill Aff. at ¶ 8. As Rivera and Molina were exiting the courthouse, the detectives asked Rivera and Molina if they would accompany them to the Nassau County precinct to answer questions about Mejia's disappearance. Rivera and Molina agreed. Traill Aff. at ¶ 8. Once at the Nassau County precinct, the pair were separated and questioned over several hours; they were read <u>Miranda</u> warnings on multiple occasions, each time refusing to exercise those rights. Traill Aff. at ¶ 9. After hours of questioning, during which time the suspects remained unhandcuffed, were offered food and beverages and given access to a restroom, Molina eventually confessed, giving detectives a detailed description of both the burglary/robbery and the murder/kidnapping perpetrated against Mejia and implicating Rivera in the crimes. Traill Aff. at ¶¶ 9-12. Police then accompanied Molina to the place where Rivera and Molina had buried Mejia. Traill Aff. at ¶ 12.

Upon returning to the precinct, Molina provided police with a written confession, implicating himself and Rivera in the burglary/robbery, witness tampering, kidnapping and murder of

Mejia.  After detectives showed Rivera a copy of Molina's written statement and read him his <u>Miranda</u> warnings, Rivera made a signed statement, implicating himself in the murder and kidnapping of Mejia.  Dunaway/Mapp/Huntley Hearing Transcript ("Hearing Tr.") at 460-69.  Rivera also placed a telephone call during which further incriminating statements were made.  Hearing Tr. at 469-71; Traill Aff. at ¶ 12.

Evidence adduced at trial explained the events leading to Mejia's death as follows.  Rivera and Molina had kidnapped Mejia hoping to intimidate her so that she would not testify in the burglary/robbery trial.  Traill Aff. at ¶ 4.  When she refused, Rivera and Molina drove Mejia to a location in Queens where they had already dug a grave for her and strangled her to death. Traill Aff. at ¶¶ 6-7.  They removed Mejia's teeth and fingertips and poured and sulfuric acid on her face and body so that if Mejia was found, she could not be identified.  Traill Aff. at ¶ 7.  They then covered Mejia with lime and earth until the grave was completely covered.  Traill Aff. at ¶ 7.  The two gathered Mejia's personal property and items used to commit the crime and disposed of them in various locations throughout Brooklyn and Queens.  Traill Aff. at ¶ 7.

For these crimes, both petitioner and Molina were charged with two counts of Murder in the Second Degree (New York Penal Law §§ 125.25(1) and (3)), Kidnaping in the First Degree (New York Penal Law § 135.23(3)) and Tampering with a Witness in the

First Degree (New York Penal Law § 215.13(1)).  Queens County
Indictment 699/95; Traill Aff. at ¶ 13.

In a joint suppression hearing, Rivera and Molina each
attempted to suppress the incriminating statements they had made
to police, alleging that the statements were coerced and obtained
despite an indelibly attached right to counsel.  Traill Aff. at
¶ 14.  The court denied both suppression motions.  Traill Aff. at
¶ 14.

After the joint-suppression hearing, Molina and Rivera were
tried separately.  Rivera exercised his right to a jury trial on
the murder/kidnapping/witness tampering charges, which was held
in the New York Supreme Court in Queens County.  The jury found
Rivera guilty of all counts charged.  He was sentenced to two 25-
year to life terms, one for each murder count, one 25-year to
life term for the kidnaping count and one 8 1/3-year to 25-year
term for the witness tampering count.  The kidnaping count was
ordered to run consecutively to the murder counts while all other
sentences were ordered to run concurrently.[1]

Once the murder/kidnapping/witness tampering trial was
complete, the state then pursued the original burglary/robbery
charge against Rivera.  Rivera pled guilty to all of the charges
covered by Indictment 1894/94, including robbery, burglary,

---

[1] Molina was found guilty of the same charges and sentenced
identically.  Both defendants' sentences were later modified to
run concurrently, as indicated _infra_.

4

weapons possession and possession of stolen property, with the understanding that: (1) any new jail time would be served concurrently with the already ordered terms of imprisonment for murder, kidnaping and witness tampering; and (2) any reversal of the murder/kidnapping/witness tampering charges would allow Rivera to withdraw his guilty plea on the burglary/robbery charges. Traill Aff. at ¶ 23.

**(2)**

**Procedural History**

**a. Molina's and Rivera's direct appeals**

On March 9, 1998, Rivera's co-defendant, Molina, filed a direct appeal with the Appellate Division, Second Department, arguing that the trial court erroneously admitted incriminating statements obtained in violation of his right to counsel. The Appellate Division succinctly concluded that "the statements obtained following the discovery of the body should have been suppressed" but held that "their admission constituted harmless error in light of the overwhelming evidence of the defendant's guilt." People v. Molina, 248 A.D.2d 489, 490, 670 N.Y.S.2d 44, 46 (2d Dep't 1998) (citing People v. Cohen, 90 N.Y.2d 632, 687 N.E.2d 1313, 665 N.Y.S.2d 30 (1997) and People v. Burdo, 91 N.Y.2d 146, 690 N.E.2d 854, 667 N.Y.S.2d 970 (1997)).

Following Molina's appeal, Rivera, by counsel, filed a
direct appeal with the Appellate Division, Second Department,
arguing that, just as the Appellate Division had found in <u>People
v. Molina</u>, 248 A.D.2d 489, 490, 670 N.Y.S.2d 44, 46 (2d Dep't
1998), the incriminating statements Rivera made violated his
right to counsel, and, therefore, should have been suppressed.
Specifically, Rivera argued: 1) that police exploited Rivera's
right to counsel by questioning him on the robbery matter, for
which he was represented, to get information about the
murder/kidnapping, for which Rivera was not represented, Brief
for Defendant-Appellant ("Def. App. Br.") at 54 (citing <u>People v.
Ermo</u>, 47 N.Y.2d 863, 392 N.E.2d 1248, 419 N.Y.S.2d 65
(1979)); and 2) because he was represented by counsel on the
burglary/robbery charge, and the murder/kidnapping/witness
tampering case was so intertwined with the burglary/robbery case,
Rivera could not waive his <u>Miranda</u> rights without his attorney
present, Def. App. Br. at 43 (citing <u>People v. Vella</u>,21 N.Y.2d
249, 234 N.E.2d 422, 287 N.Y.S.2d 369 (1967)).  Rivera further
claimed that, unlike Molina, failure to suppress did not
constitute harmless error, but instead materially affected the
outcome of the trial.[2]

_____

[2] Additionally, Rivera claimed that his sentence was improperly
fashioned and that the term of imprisonment for kidnapping should
have run concurrently and not consecutively to the prison terms
for murder.  The state did not oppose Rivera's motion to modify
the sentences and the sentences were modified to run concurrently
on appeal.  <u>People v. Rivera</u>, 277 A.D.2d 470, 471-72, 716

The state argued that the evidence was properly admitted at trial and that the conviction should stand. Specifically, the state argued that the police asked petitioner no questions about his pending robbery case, and, therefore, the interrogation contained no questions about the underlying robbery that were "inextricably intertwined" with the questions about the disappearance of Mejia. Traill Aff. ¶ 26.

On November 27, 2000, the Appellate Division rejected Rivera's claim that any of his post-emergency inculpatory statements should have been suppressed, specifically finding that "the police did not question him about the robbery charges" and the interrogation "did not contain any impermissible questioning that 'was not discrete or fairly separable' from the robbery charges." Rivera, 277 A.D.2d at 471-72, 716 N.Y.S.2d at 705 (2d Dep't 2000) (quoting Cohen, 90 N.Y.2d at 640, 687 N.E.2d at 1317, 665 N.Y.S.2d at 34 and citing Ermo, 47 N.Y.2d at 865, 392 N.E.2d at 1248, 419 N.Y.S.2d at 65). The court further held that "the robbery and murder charges were not so interwoven in terms of their temporal proximity and factual interrelatedness that any interrogation concerning the victim's disappearance would 'almost necessarily' elicit statements pertaining to the robbery." Id. at 472, 716 N.Y.S.2d at 705 (quoting Cohen, 90 N.Y.2d at 639, 687

---

N.Y.S.2d 704, 705 (2d Dep't 2000).

N.E.2d at 1317, 665 N.Y.S.2d at 34 and citing <u>Vella</u>, 21 N.Y.2d at

250, 234 N.E.2d at 422, 287 N.Y.S.2d at 370 (1967)).

In a letter dated December 19, 2000, through counsel, Rivera

sought leave to appeal the Appellate Division's decision to the

Court of Appeals.  In a letter dated January 12, 2001, Rivera,

through counsel, supplemented his application for leave

("Supplemental Leave Application"), arguing that the Appellate

Division had applied the wrong standard in deciding petitioner's

appeal.[3]

Leave to appeal was denied on May 21, 2001.  <u>People v.</u>

<u>Rivera</u>, 96 N.Y.2d 833, 754 N.E.2d 214, 729 N.Y.S.2d 454 (2001).

On April 3, 2002, Rivera filed a motion for a writ of <u>coram</u>

<u>nobis</u>, claiming that his appellate counsel was ineffective for

failing to argue that Rivera's statements were involuntary

because: (1) Rivera was not provided with Miranda warnings;

(2) Rivera was questioned after requesting an attorney; and (3)

Rivera's desire not to give a statement was overcome by threats,

physical intimidation and mental torture.  Traill Aff. at ¶ 30.

---

[3] Rivera argued that the Appellate Division's formulation of the
<u>Vella</u> standard, as interpreted by <u>Cohen</u>, was too narrow, as it
only barred questions that will elicit answers that specifically
"pertain to" another crime for which the right to counsel has
attached.  Rivera argued that the proper standard is whether the
robbery and murder charges were related such that questioning on
the murder would elicit "incriminating responses regarding" the
robbery.  The standard put forth by Rivera would additionally bar
questions that, while they do not directly pertain to a crime for
which the right to counsel has attached, are likely to elicit
answers that may show evidence of guilt on represented matters.

The Appellate Division held that Rivera had not adequately demonstrated that his counsel was ineffective and denied the motion for a writ of <u>coram</u> <u>nobis</u>. <u>People v. Rivera</u>, 296 A.D.2d 584, 745 N.Y.S.2d 728 (2d Dep't 2002). Rivera's August 15, 2002 motion to re-argue the <u>coram</u> <u>nobis</u> motion was subsequently denied on November 21, 2001. Traill Aff. at ¶ 32.

On August 22, 2002, Rivera moved the New York Supreme Court to vacate his judgment of conviction pursuant to New York Criminal Procedure Law ("NYCPL") § 440.10, alleging that his trial counsel provided constitutionally ineffective representation. Specifically, Rivera claimed that counsel was ineffective for: 1) failing to call two potential alibi witnesses; and 2) failing to call an eyewitness to the kidnapping who had originally related a different version of what had occurred during the kidnapping outside of Mejia's apartment. The court denied the motion on February 26, 2004, finding that Rivera had failed to substantiate his claims. Petitioner's leave to appeal to the Appellate Division was denied on July 23, 2004.

On November 16, 2004, Rivera filed the instant <u>pro</u> <u>se</u> petition to vacate his conviction and sentence pursuant to 28 U.S.C. § 2254, claiming that he was denied due process of law and equal protection under the Fourteenth Amendment of the United States Constitution. Pet'r Mem. of Law at 2. Specifically, Rivera alleges that his rights were violated "when the Appellate Division rendered contradictory decisions on two separate appeals

involving the very same case, raising the same claims, and [the] same facts under the same rules of law."  Pet'r Mem. of Law at 2. He argues that "if Molina was entitled to suppression because he was represented by counsel on the pending related [burglary/robbery] charges, then this petitioner was also entitled to suppression because he was also represented by counsel."  Pet'r Mem. of Law at 6.  Rivera further claims that failure to suppress was not harmless.  Id. at 6.  As such, Rivera moves for reversal of his conviction and release from custody pending a new trial.

## Discussion

### (1)

### Petitioner's Claims are Unexhausted and Procedurally Defaulted

### a. Applicable Law

The state argues that petitioner has failed to exhaust the claims contained in his § 2254 petition and is, therefore, barred from pursuing them.

Before a federal habeas court may examine a petition for a writ of habeas corpus arising from a state criminal procedure, the petitioner must have first "exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).  In order to exhaust claims, a petitioner must "fairly present" to the highest state court of the pertinent state the same constitutional claims asserted in the habeas petition; this is

required so that state courts are given the opportunity to correct federal constitutional violations that arise in their jurisdictions.  <u>See, e.g.</u>, <u>Levine v. Comm'r of Corr. Servs.</u>, 44 F.3d 121, 124 (2d Cir. 1995).  In order to "fairly present" a claim, a petitioner "must have informed the state court of both the factual and the legal premises of the claim he asserts in federal court."  <u>Daye v. Attorney General</u>, 696 F.2d 186, 191 (2d Cir. 1982) (<u>en</u> <u>banc</u>) (citing <u>Picard v. Connor</u>, 404 U.S. 270, 276-77 (1971)).  The ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim are:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

<u>Daye</u>, 696 F.2d at 194.

If a claim is unexhausted, but there is a forum in state court in which to present the claim, federal courts will generally abstain from habeas review, but may offer the petitioner "the choice of returning to state court to exhaust his claims."  <u>Rose v. Lundy</u>, 455 U.S. 509, 510 (1982).  However, if, at the time a state prisoner applied for federal relief, the claim is unexhausted and it is clear that the state court would hold the claim procedurally barred, the claim is deemed exhausted.  <u>See</u> <u>Williams v. Goord</u>, 277 F. Supp. 2d 309, 316

(S.D.N.Y. 2003) ("When a petitioner fails to 'fairly present' his claim to each level of the state courts to which he is entitled to seek relief and is subsequently barred from presenting the claims to the highest court of the state, the petitioner's claims are not properly exhausted for purposes of federal habeas review.") (citing Coleman v. Thompson, 501 U.S. 722, 731-32, 735 n. 1 (1991)); Ramirez v. Attorney General of State of New York, 280 F.3d 87, 94 (2d Cir. 2001) ("Even if a federal claim has not been presented to the highest state court or preserved in lower state courts under state law, it will be deemed exhausted if it is, as a result, then procedurally barred under state law."); Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991) (same).

When a claim is considered to be procedurally barred, the only way for a petitioner to obtain federal habeas corpus review of the merits of the claim is if petitioner can show good "cause" for the default and actual "prejudice" resulting from the noncompliance with the state's procedural rule, see Murray v. Carrier, 477 U.S. 478, 485 (1986), or show that he is "actually innocent," id. at 496.  In order to establish "cause" for his default, Rivera must show that "some objective external factor impeded his ability to comply with the relevant procedural rule." Wilson v. Superintendent, Attica Corr. Facility, No. 00-CV-0767, 2003 WL 22765351, at *3 (N.D.N.Y. Nov. 24, 2003) (citing Coleman, 501 U.S. at 753).  In order to establish "prejudice," Rivera must show that "'there is a reasonable probability' that the result of

12

the trial would have been different" absent the complained of

constitutional violation.  <u>Stickler v. Greene</u>, 527 U.S. 263, 289,

(1999).


**b. Analysis**

Here, Rivera failed to adequately raise either the equal

protection or due process claims contained in his instant

petition to any state court, even though the factual and legal

bases for Rivera's instant equal protection and due process

claims were available once the Appellate Division rendered its

decision.  First, Rivera never filed a motion to the Appellate

Division to amend its order, pursuant to New York Rules of Court

§ 670.6(a), which would have been the most appropriate motion in

which to have raised his due process and equal protection

claims.[4]  Furthermore, he made no mention of the claims in his

Section 440.10 motion.  Finally, he failed to adequately raise

the claims in his leave application to the Court of Appeals.  The

only mention of anything resembling petitioner's instant due

---

[4]  Motions for reargument in the Second Department are governed
by CPL § 470.50(1) and 22 N.Y. Compl. Codes R. & Regs.
("N.Y.C.R.R.") tit. 14, § 670.6(a).  Under CPL § 470.50(1),
"[a]fter its determination of an appeal taken pursuant to article
four hundred fifty, an appellate court may in its discretion,
upon motion of a party adversely affected by its determination,
or upon its own motion, order a reargument or reconsideration of
the appeal."  The rules in the Second Department provide that
such motions be made "within 30 days after service of a copy of
the decision and order determining the cause or motion, with
notice of its entry."  22 N.Y.C.R.R. § 670.6(a).

process and equal protection claims is contained in footnote six

of his Supplemental Leave Application, which reads:

> "Although not having any direct bearing on whether
> leave should be granted, there is one curious feature
> of the opinions in <u>Molina</u> and this case that is worth
> noting.  Prior to the Appellate Division's decision in
> defendant's case, defendant had assumed that the Second
> Department's observation that Molina's post-emergency
> statements should have been suppressed was based on a
> <u>Vella</u>-type analysis.  After all, the Appellate Division
> had characterized Molina's argument as being based on
> 'the absence of the attorney who was representing him
> on the related charges pending in Queens County.'  Yet,
> in its opinion in defendant's case, the Second
> Department made no effort to explain why Molina's post
> emergency statements <u>should</u> have been suppressed and
> defendant's post-emergency statements <u>should not</u> have
> been suppressed."  Supplemental Leave App. at 8 n.6
> (citations omitted).

This footnote does not refer to due process or equal protection

clauses of the Constitution, cite to any federal or state cases

employing constitutional analysis, assert the claims in a way

which calls to mind a specific right protected by the

Constitution or allege a pattern of facts that is "well within

the mainstream of constitutional litigation." <u>Daye</u>, 696 F.2d at

192.  Furthermore, not only does footnote 6 fail to alert the

Court of Appeals that a federal constitutional claim was at

issue, but it specifically instructed the Court of Appeals that

the issue contained within it does "not have any direct bearing

on whether leave should be granted."  Supplemental Leave App. at

8 n.6.  It is inconsistent for petitioner to now contend that he

"fairly raised" his current due process and equal protection

arguments to the Court of Appeals in footnote 6 when footnote 6

14

actually instructs the Court otherwise.  Thus, petitioner's claims were not "fairly presented" to the Court of Appeals and, therefore, are unexhausted.  See, e.g., Lyon v. Senkowski, 109 F. Supp. 2d 125, 139 (W.D.N.Y. 2000) (finding claims unexhausted where petitioner failed to raise them on direct appeal or in his state motion to vacate judgment, as required for federal habeas review); Petrucelli v. Coombe, 735 F.2d 684, 690 (2d Cir. 1984) (references to due process of law in Appellant's brief were not sufficient to inform state courts of petitioner's constitutional double jeopardy claim for purpose of exhaustion requirement).

Moreover, both Rivera's and Molina's appeals had been decided by the Appellate Division in time for Rivera to raise the equal protection and due process arguments in his motion for leave to appeal to the Court of Appeals, in his § 440.10 motion and in a motion for reargument of the Appellate Division's decision.  However, Rivera failed to do so.  Therefore, his claims are unexhausted.

Rivera no longer has the right to raise these claims under New York law either on direct appeal or on collateral review. For example, Rivera is time-barred from making a motion for reargument to the Appellate Division, Second Department.  22 N.Y.C.R.R. § 670.6(a) (motions for reargument must be made "within 30 days after service of a copy of the decision and order determining the cause or motion, with notice of its entry," unless good cause is shown).  He is also precluded from raising

this claim in a new Section 440.10 motion. CPL § 440.10
(3)(c)("The court may deny a motion to vacate a judgment when . .
. [u]pon a previous motion made pursuant to this section, the
defendant was in a position adequately to raise the ground or
issue underlying the present motion but did not do so."). 
Finally, he is time-barred from making a motion for reargument or
reconsideration to the Court of Appeals of its denial of his
leave to appeal. 22 N.Y.C.R.R. § 500.20(d) ("Unless otherwise
permitted by the assigned Judge, the reargument or
reconsideration request shall be served not later than 30 days
after the date of the certificate determining the application of
which reargument or reconsideration is sought."). Thus, the
unpresented claims are now procedurally barred under New York
law, and, therefore, deemed exhausted for federal habeas
purposes. See Ramirez, 280 F.3d at 94; Grey, 933 F.2d at 120.

In order to overcome this procedural default and have the
merits of his claims reached, petitioner must show cause and
prejudice or that he is actually innocent. However, petitioner
has not shown cause for his procedural default[5] nor is any cause

---

[5] In his petition, petitioner assumes that he fairly presented
the question of due process and equal protection in his
Supplemental Leave Application. He, nonetheless, argues that
"cause" is met because the Court of Appeal's denial of leave to
appeal precluded him from presenting his claim to the Court of
Appeals, and, therefore, his claim is exhausted. However, a
petitioning party cannot claim that cause is met based on the
denial of leave to appeal on a different subject matter.

apparent from the record.[6]  In the absence of cause, there is no

need to address the issue of prejudice.  Long v. Lord, No.

03-CV-0461, 2006 WL 1977435, at *6 (N.D.N.Y. Mar. 21, 2006)

(citing Stepney v. Lopes, 760 F.2d 40, 45 (2d Cir. 1985)).

Finally, as petitioner has failed to argue, much less

demonstrate, that he is actually innocent or offer any new

evidence of innocence, petitioner's claims are procedurally

barred.


## (2)

### Absence of Federal Claim

Even if there were still avenues available to allow

petitioner to exhaust his claims, petitioner's claims are not

cognizable on federal habeas review.  Federal habeas courts may

only review claims arising under federal law or the United States

Constitution.  See 28 U.S.C. § 2254(a) ("[A] district court shall

---

[6] Even if petitioner contended the ineffective assistance of
counsel to properly present his due process and equal protection
claims in the Supplemental Leave Application served as cause for
his default, such a claim would fail because "counsel's
ineffectiveness will constitute cause only if it is an
independent constitutional violation." Williams, 277 F. Supp. 2d
at 317 (quoting Coleman, 501 U.S. at 755 (internal quotations
omitted).  As there is no constitutional right to assistance of
counsel with respect to filing discretionary appeals,
petitioner's attorney could not have been constitutionally
ineffective, and, therefore, cannot constitute the requisite
"cause" for the procedural default.  Williams, 277 F. Supp. 2d at
317 (finding petitioner's counsel's failure to properly seek
leave to appeal to the New York Court of Appeals does not
constitute "cause" to excuse petitioner's failure to exhaust his
remedies under state law).

entertain an application for a writ of habeas corpus . . . only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." <u>Estelle v. McGuire</u>, 502 U.S. 62 (1991).

Here, petitioner is not claiming that the Appellate Division wrongly adjudicated a federal constitutional claim;[7] instead, he is claiming that the state court misapplied state law to the facts of his case while it correctly applied the same state law to a similarly-situated defendant, and this misapplication rises to the level of a due process and equal protection violation. In addition, petitioner has cited no precedent that indicates the existence of an actionable constitutional violation arising from conflicting state court decisions.

Although a state court's misapplication of state law may be a violation of <u>stare</u> <u>decisis</u>, it is generally not reviewable by a

[7] The Sixth Amendment right to counsel is "offense specific," <u>McNeil v. Wisconsin</u>, 501 U.S. 171, 175-76 (1991), and does not contain "an exception for crimes that are 'factually related' to a charged offense," <u>Texas</u>, 532 U.S. at 168-170. Rivera claims that the Appellate Division misapplied <u>Ermo</u> and <u>Vella</u>, two decisions from the New York Court of Appeals, to the facts of his case while applying them correctly to Molina's case. To the extent that <u>Ermo</u> and <u>Vella</u> exceed federal constitutional requirements, they define state law, and any misapplication of state law created by these cases is not cognizable on federal habeas review. <u>See</u> <u>Hill v. Senkowski</u>, 409 F. Supp. 2d 222, 232 (W.D.N.Y. 2006) (holding that, to the extent a state law claim is broader than a similar federal right, the state law claim is not cognizable on federal habeas review).

federal habeas court.  See Estelle v. McGuire, 502 U.S. 62
(1991).  In order for Rivera's claims to be cognizable on habeas
review, petitioner must show that the state court's application
of its own law was egregious enough to implicate petitioner's
constitutional rights.  See Kennick v. Superior Court, 736 F.2d
1277, 1280 (9th Cir. 1984) ("Absent arbitrary or discriminatory
action . . . a mistake of state law does not constitute a due
process violation . . .").  However, petitioner has failed to
show that the Appellate Division's application of state law to
his case or the disparity between the appellate court decisions
present an error of constitutional magnitude.

Furthermore, it is evident that the Appellate Division was
relying on different facts, and appropriately applied the
relevant case law to the differing facts of Rivera and Molina's
case.[8]  In Molina's case, the police officers admitted at trial
that they asked Molina questions about the robbery.  Molina, 248
A.D.2d at 490, 670 N.Y.S.2d at 46 (holding that certain
statements made to police after Mejia was found deceased should
have been suppressed).  However, in Rivera's case, the Appellate

_____

[8] When a federal habeas court is petitioned to review the factual
findings of a state court, principles of comity require that the
federal court not overturn factual findings unless they are
proven to be erroneous by clear and convincing evidence.
Further, a mere error by a state court will not allow for
reversal of factual findings, but "the state court decision
[must] reveal[] an increment of wrongness beyond error." Francis
S. v. Stone, 221 F.3d 100, 110 (2nd Cir. 2000)(citing Van Tran v.
Lindsey, 212 F.3d 1143, 1153-54, 1159 (9th Cir. 2000)).
19

Division found that Rivera was not asked direct questions about the robbery.  <u>Rivera</u>, 277 A.D.2d at 471-72, 716 N.Y.S.2d at 705.

Moreover, Rivera's habeas petition makes clear that he believes that when the Appellate Division held Molina's statements should have been suppressed, it necessarily "conceded" that burglary/robbery and kidnaping/murder/witness tampering cases "were related enough for the indelible right of counsel to attach."  Pet'r Mem. of Law at 3, 8.  Thus, he argues, the Appellate Division treated him unequally when it "did not apply the same ruling" to him.  <u>Id.</u> at 8.  Rivera's misunderstanding of the <u>Molina</u> court's reasoning appears to be the basis for his belief that the Appellate Division treated him differently from Molina, and that the difference in treatment rose to the level of a constitutional violation.

Although the Appellate Division did not expressly state why it suppressed Molina's statements,[9] immediately following its holding, it cites to <u>Cohen</u>, 90 N.Y.2d at 632, 687 N.E.2d at 1313, 665 N.Y.S.2d at 30,[10] a case where the court found that

_____

[9] The Appellate Division simply stated: "[a]lthough the statements obtained following the discovery of the body should have been suppressed (<u>see</u> <u>People v. Cohen</u>, <u>supra</u>; <u>People v Burdo</u>, 91 N.Y.2d 146) their admission constituted harmless error in light of the overwhelming evidence of the defendant's guilt."  <u>Molina</u>, 248 A.D.2d at 490, 670 N.Y.S.2d at 46.

[10]  In <u>Cohen</u>, the defendant was represented by counsel on a burglary/weapons theft charge and the police knew that he was represented by counsel on this matter.  90 N.Y.2d at 632, 687 N.E.2d at 1313, 665 N.Y.S.2d at 30.  When a bullet matching one of the weapons he was suspected of stealing was found at a robbery/ murder scene, the defendant, after voluntarily coming

20

statements made in response to questioning concerning both an

unrepresented and a represented matter in the course of the same

interrogation should have been suppressed.  In that case, the

Cohen court first distinguished Cohen's interrogation from the

interrogation not permitted in People v. Vella[11] and then went on

to rely on People v. Ermo[12] in holding that Cohen's statements

---

with police to the station and waiving his Miranda rights, was
asked questions about both the represented burglary/weapons theft
as well as the unrepresented robbery/murder.  Id.  In deciding
whether the police violated Cohen's right to counsel by their
interrogation, the Cohen court discussed Vella and Ermo, two
lines of cases dealing with police interrogation of a suspect
regarding one crime after the right to counsel has indelibly
attached by the actual appearance of an attorney representing
that suspect in another crime.  Id. at 638, 687 N.E.2d at 1313,
665 N.Y.S.2d at 30.

[11] The first line of cases (the "Vella line") involves a
situation "where the two criminal matters are so closely related
transactionally, or in space or time, that questioning on the
unrepresented matter would all but inevitably elicit
incriminating responses regarding the matter in which there had
been an entry of counsel."  Cohen, 90 N.Y.2d at 638, 687 N.E.2d
at 1316, 665 N.Y.S.2d at 33.  The court noted that in these
cases, "interrogation on the unrepresented crime is prohibited
even in the absence of direct questioning regarding the crime on
which counsel has appeared." Id. at 638-39, 687 N.E.2d at 1316-
17, 665 N.Y.S.2d at 33.  The Cohen court rejected the
applicability of the Vella line to Cohen's case, finding that the
"represented and unrepresented crimes [were not] so throughly
interrelated that questioning on one [would] almost necessarily
elicit incriminating responses on the other."  Id. at 639, 687
N.E.2d at 1317, 665 N.Y.S.2d at 34.  Consequently, had the police
been "mindful and respectful" about defendant's right to counsel
on the burglary/weapon theft, "discrete questioning" about the
robbery/murder case "would not have created any serious risk of
incriminating responses" on the burglary/weapon theft.  Id. at
639-40, 687 N.E.2d at 1317, 665 N.Y.S.2d at 34.

[12] The second line of cases (the "Ermo line") involves
intermingled interrogations where questioning on the represented
crime is "not discrete or fairly separable" from the questioning
on the unrepresented crime, where questioning on the represented

21

should have been suppressed.  By citing to <u>Cohen</u> immediately
following the decision to suppress Molina's statements, it is
clear that the <u>Molina</u> court based its suppression on the same
reasoning as the <u>Cohen</u> court, specifically on the <u>Ermo</u> line of
cases, and not on the <u>Vella</u> line.

Unlike <u>Vella</u>, the <u>Ermo</u> line of cases does not require a
finding of interrelatedness of the <u>crimes</u> in order for
suppression to be warranted, but requires an interrelatedness of
the <u>questioning</u> about the two crimes.  Thus, Rivera's statement
that the <u>Molina</u> court's holding "conceded" that <u>crimes</u> of
burglary/robbery and kidnaping/murder/witness tampering "were
related enough for the indelible right of counsel to attach,"
Pet'r Mem. of Law at 3, 8, is misdirected.  As the Appellate
Division found, Rivera was not asked questions about the robbery
(in comparison to Molina, where the police officers admitted that
they asked Molina questions about the robbery), there could be no
intermingling of questions about the burglary/robbery with
questions about the kidnaping/murder/ witness tampering, and,

---

charge is used "'as a crucial element' in securing the
defendant's confession" on the unrepresented charge, and/or where
the police concededly exploit impermissible questioning on the
represented charge "in order to advance their interrogation"
regarding the unrepresented charge.  <u>Cohen,</u> 90 N.Y.2d at 640, 687
N.E.2d at 1317-18, 665 N.Y.S.2d at 34-35 (quoting Ermo, 47 N.Y.2d
at 865, 392 N.E.2d at 1248, 419 N.Y.S.2d at 65).  The <u>Cohen</u> court
found that the <u>Ermo</u> line of cases applied to the facts of
defendant's case and suppressed his confession.  <u>Id.</u> at 642, 687
N.E.2d at 1319, 665 N.Y.S.2d at 36.

therefore, <u>Ermo</u> was inapplicable.[13]  <u>Cf.</u> <u>Cohen</u> (finding

suppression warranted under <u>Ermo</u> when police initiated

interrogation on an unrepresented charge but intermingled

questions concerning a represented charge, until defendant

incriminated himself on the unrepresented charge and police

admitted that they believed there was a connection between the

two).  Thus, the <u>Molina</u> court's holding that suppression was

warranted based on <u>Ermo</u> was not applicable to Rivera.

Furthermore, the <u>Molina</u> court did not discuss nor rely on

precedent holding that the <u>Vella</u> cases required suppression of

Molina's statements.  Thus, there is nothing about the Molina

court's decision that "conceded" that <u>crimes</u> of burglary/robbery

and kidnaping/murder/witness tampering were so related as to

require suppression under <u>Vella</u>.  As such, the Appellate

Division's decision to suppress in <u>Molina</u> is not at odds with its

---

[13] The Appellate Division stated, "[d]uring the course of
[Rivera's] interrogation, the police did not question him about
the robbery charges. Rather, the detectives confined their
questioning to matters concerning the defendant's possible
involvement in Ms. Mejia's disappearance. The interrogation did
not contain any impermissible questioning that 'was not discrete
or fairly separable' from the robbery charges, the police did not
use the robbery charges as a 'crucial element' in securing the
defendant's confession to the murder charges, and the police did
not exploit 'concededly impermissible questioning' related to the
robbery charge to advance their interrogation of the murder
case." <u>Rivera</u>, 277 A.D.2d at 471, 716 N.Y.S.2d at 705 (citing
<u>Cohen,</u> 90 N.Y.2d at 638-39, 687 N.E.2d at 1313, 665 N.Y.S.2d at
30 and <u>Ermo</u>, 47 N.Y.2d at 865, 392 N.E.2d at 1249, 419 N.Y.S.2d
at 66).

holding in <u>Rivera</u> that the crimes were not so intertwined as to warrant suppression under <u>Vella</u>.

Thus, the Appellate Division's factual findings are supported by the record and its application of the law was neither arbitrary nor discriminatory. Rivera has failed to show that he and Molina were similarly situated and that the Appellate Division treated them differently or arbitrarily applied state law to the facts of his case. Thus, because Rivera has not shown that the state court's decision was either arbitrary or discriminatory, he has not alleged a federal constitutional violation supporting habeas corpus review and his claims are not cognizable on federal habeas review. <u>See</u> <u>Kennick v. Superior Court</u>, 736 F.2d 1277, 1280 (9th Cir. 1984).

**Conclusion**

For the aforementioned reasons, Rivera's petition is denied.

No Certificate of Appealability will issue.  The Clerk of the

Court is directed to close the case.

Dated:     Brooklyn, New York
           October 25, 2007
                              SO ORDERED:


                              _____/s/_____
                              David G. Trager
                              United States District Judge